# In the
## United States Court of Appeals
## For The Sixth Circuit
## Case No. 24-5334

**UNITED STATES OF AMERICA**                     **Plaintiff-Appellee**

**V.**

**DALTON SAMUEL BROOKS**                     **Defendant-Appellant**

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF KENTUCKY
### AT COVINGTON

### PRINCIPAL BRIEF OF THE APPELLANT

S/Howe_____

***Steven N. Howe, P.S.C.***
Attorney for Defendant/Appellant
507 North Main Street
Williamstown, KY 41097
(859) 824-0500
stevenhowe@howeattorney.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................    i

AUTHORITIES....................................................................................    ii

STATEMENT REGARDING ORAL ARGUMENT.............................    iv

STATEMENT OF SUBJECT MATTER
     AND APPELLATE JURISDICTION.............................................    1

STATEMENT OF THE ISSUE...............................................................    2

STATEMENT OF THE CASE.................................................................    2

STATEMENT OF THE FACTS...............................................................    2

SUMMARY OF THE ARGUMENT.......................................................    5

ARGUMENT.........................................................................................    6

CONCLUSION......................................................................................    22

CERTIFICATE OF COMPLIANCE.......................................................    22

CERTIFICATE OF SERVICE................................................................    23

## AUTHORITIES

### Cases

*Chambers v. Stengel*, 256 F.3d 397, 400 (6th Cir. 2001). ……………………………… 6

*District of Columbia v. Heller,*
    554 U.S. 570, 128 S.Ct. 2783 (2008)……………………………..6, 7, 8, 9, 19, 20

*First Choice Chiropractic, LLC v. DeWine*, 969 F.3d 675, 681 (6th Cir. 2020)………. 6

*Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019)………………………10, 11, 12, 13, 16

*Konigsberg v. State Bar*,366 U.S. 36, 50 (1961)………………………………………8

*New York State Rifle & Pistol Association vs. Bruen,*
    142 S. Ct. 2111 (2022) ………...2, 4, 5, 6, 7, 8, 9, 13, 14, 15, 16, 17, 18, 19, 21, 22

*Presser v. Illinois*, 116 U.S. 252, 265 (1886)……………………………………………15

*Range v. Attorney General United States of America,*
    69 4th 96, at 106 (3rd Cir. 2023)………………………………14, 15, 16, 18

*United States v. Cruikshank*, 92 U.S. 542, 553 (1875) ………………………………… 14

*United States vs Duarte* 9th 101 F.4th 657 (9th Circuit 2024)…………………….......18

*United States vs. Johnson,* 135 S.Ct. 2551 (2015)……………………………………...18

*United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206(1939) ……...…19, 20

*United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024)……………… 5, 9, 15, 17, 21, 22

*United States v Welch*, 774 F.3d 891 (6th Cir. 2014) ……………………………………18

### Statutes and Other Authorities

18 U.S.C. §922(g)(1) ………………………………………...2, 4, 10, 15, 17, 21, 22

18 U.S.C. §922(g)(8)… ……………………………………………………….9, 17

18 U.S.C. §922(g)(8)(C)(i)... ……………………………………………………… 9

18 U.S.C. §3231………………………………………………………………………1

18 U.S.C. §3553(a)………………………………………………………………...18

18 U.S.C. §5841……………………………………………………………………4

18 U.S.C. §5871……………………………………………………………… 4

26 U.S.C. §5861(d)………………………………………………… 2, 4, 19, 21, 22

26 U.S.C. §5845 (a)………………………………………………………… 21

28 U.S.C. §1291………………………………………………………….……. 1

U.S.S.G. §4B1.2(a)…………………………………………………………….. 17

Tex. Fam. Code Ann. §85.025(c) (West 2019)…………………………………. 9

*Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1375 (2009)……….7, 8, 10

*1 Jonathan Elliot, The Debates in the Several State Conventions of the Adoption of the Federal Constitution 326 (2d ed. 1891*………………… 11

*Why Can't Martha Stewart Have a Gun?* 32 Harv. J.L & Pub. Pol'y 695, 708 (2009)(Marshall, *Martha Stewart*)…………………………………….10, 11, 14

*The Historical Justifications for Prohibiting Dangerous Persons from Possessing Firearms*, 20 Wyoming L. Rev. 249, 266 (2020); …………… 11

*A View of the Constitution of the United States of America*……………………………14

*Wikipedia, Ithaca Auto and Burglar*……………………………………………..19, 20

*Wikipedia H & R Handy Gun*…………………………………………………… 20

iii

## STATEMENT REGARDING ORAL ARGUMENT

Defendant/Appellant is not requesting an oral argument.

## STATEMENTS OF SUBJECT MATTER AND APPELLATE JURISDICTION

Defendant-Appellant states that:

(i)     Subject matter jurisdiction in this case was vested in the United States District Court for the Eastern District of Kentucky upon the filing of an Indictment on June 8, 2023 (R., Indictment, Doc ID #1, Pg. ID #1-4) naming the United States of America as Plaintiff and Dalton Samuel Brooks as Defendant by virtue of 18 U.S.C. §3231, which grants original jurisdiction to the District Court over all offenses against the laws of the United States;

(ii)    The Defendant-Appellant plead guilty to Felon in Possession of a Firearm and Receipt or Possession of Unregistered Weapon made from a shotgun with an overall length less than 26 inches or barrel length less than 18 inches (R. Judgment in a Criminal Case, Doc ID #36, Pg ID #153) and was sentenced in the United States District Court Eastern District of Kentucky on March 28, 2024;

(iii)   Appellate jurisdiction in this cause was vested in this Court upon the filing of a Notice of Appeal by Defendant-Appellant on April 10, 2024, (R. Notice of Appeal, Doc. ID# 37, Pg. ID #160) from the Judgment by virtue of 28 U.S.C. §1291 which grants the Circuit Court of Appeals jurisdiction to review all final decisions of the District Courts;

(iv)    This appeal is from the Court's Judgment Upon a Verdict of Guilty (R. Judgment in a Criminal Case, Doc ID# 36, Pg ID #153) entered on March 29,

2024.

## STATEMENT OF THE ISSUES

1.      Whether the Court erred in determining that the United States made the requisite showing that this Nation has a historical tradition of disarming individuals convicted of felonies;

2.      Whether 18 U.S.C. §922(g)(1) is constitutional as applied to the Defendant;

3.      Whether the Court erred in determining that 26 U.S.C. §5861(d) regulates conduct outside the Second Amendment and is therefore permissible following the Supreme Court's decision in *New York State Rifle & Pistol Association vs. Bruen,* 142 S. Ct. 2111 (2022).

## STATEMENT OF THE CASE AND RELEVANT FACTS

The Defendant-Appellant is challenging the constitutionality of 18 U.S.C. §922(g)(1) and 26 U.S.C. §5861(d).

Upon being indicted the Defendant-Appellant filed a Motion To Dismiss the Indictment alleging that the Government was barred from prosecuting the Defendant-Appellant based upon the Second Amendment. (R., Motion to Dismiss, Doc. ID #14, Pg. ID 33-45)

Maysville Police Officers located the Defendant-Appellant in a red Ford vehicle and initiated a traffic stop. Officers conducted a probable cause search of

the vehicle and recovered suspected methamphetamine and marijuana, and two firearms: (1) a weapon made from a Harrington and Richardson Topper model 88, 12-gauge shotgun, bearing serial number AX472867, that had been modified to have an overall length of less than 26 inches and a barrel length less than 18 inches, and (2) a ZhongZhou Machine Works, model JW-200, 12-gauge shotgun, bearing serial number JWC108214.

The Defendant-Appellant admitted that he knowingly possessed the firearms charged in the Indictment. Both firearms were operable at the time the Defendant-Appellant possessed them.

The Defendant-Appellant further admitted that he knew the characteristics of the Harrington and Richardson firearm, namely, that it is a weapon made from a shotgun that had been modified to have an overall length of less than 26 inches and a barrel length of less then 18 inches. The Defendant-Appellant admitted that the firearm was not registered to him in the National Firearm Registration and Transfer Record.

The Defendant-Appellant was previously convicted of two felony offenses: Failure to Comply with an Order or Signal of a Police Officer (Ohio, 2021), and Aggravated Trafficking in Drugs (Ohio, 2021) The Defendant-Appellant admitted that he knew he was a felon at the time he possessed the firearms. (R. Plea Agreement, Doc. ID #28 Pg ID# 121-128)

3

The District Court in a Memorandum Opinion and Order (R. Memorandum, Opinion and Order, Doc. ID #22, Pg. ID. #105-114) overruled the Motion to Dismiss. In doing so the District Court found that Defendant-Appellant was included as a part of "the people" however the restriction on a felon's possession of a firearm fall within the Nation's historical tradition of firearms regulation. The District Court further found that 18 U.S.C. §5841, 5861(d) and 5871 addresses conduct outside of the Second Amendment therefore no finding was necessary concerning whether the statutes are consistent with the Nation's historical tradition of firearms regulation. (R. Memorandum, Opinion and Order, Doc. ID #22, Pg. ID. #105-114)

The Defendant-Appellant entered a Conditional Plea which reserved the right to appeal the following issues:

1.      Whether the Court erred in determining that the United States made the requisite showing that this Nation has a historical tradition of disarming individuals convicted of felonies;

2.      Whether 18 U.S.C. §922(g)(1) is constitutional as applied to the Defendant-Appellant;

3.      Whether the Court erred in determining that 26 U.S.C. §5861(d) regulates conduct outside the Second Amendment and is therefore permissible following the Supreme Court's decision in *New York State Rifle & Pistol*

*Association vs. Bruen,* 142 S. Ct. 2111 (2022).

## SUMMARY OF THE ARGUMENT

1.    The historical tradition of this Nation does not demonstrate the permanent disarmament of the people who have been convicted of felonies. The Supreme Court has held that when an individual has been found by a court to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment.

2.    The predicate felony offenses of the Defendant-Appellant would not qualify for disarmament under the historical traditions of this Nation. The District Court erred in finding that aggravated drug trafficking was a violent felony which equates to a finding of a present threat as discussed in *United States vs. Rahimi,* 144 S. Ct. 1889, 1898 (2024)

3.    The Defendant-Appellant was convicted of failing to register a firearm with a modified length. Because he would have been unable to register any firearm in his name as a result of his prior felony conviction it was impossible to comply with registering this firearm. The prohibition of possession of unregistered firearms is likewise not rooted in the Second Amendment's text and history. The Second Amendment provides the people the right to possess firearms and any restriction, including registration based on the statute charged is unconstitutional in the same manner as outlined above for a charge of felon in possession.

# LEGAL ARGUMENT

## Standard of Review

We review the constitutionality of the statute de novo. *Chambers v. Stengel*, 256 F.3d 397, 400 (6th Cir. 2001). *First Choice Chiropractic, LLC v. DeWine*, 969 F.3d 675, 681 (6th Cir. 2020)

1.    *Whether the Court erred in determining that the United States made the requisite showing that this Nation has a historical tradition of disarming individuals convicted of felonies;*

### Introduction

"Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.' The Second Amendment was adopted in 1791; the Fourteenth in 1868." *New York Rifle & Pistol Association vs. Bruen* 142 S.Ct. 2111, at 2136 (2022) (citation omitted).

"The test that we set forth in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. In some cases, that inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different

6

means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality. " *Bruen*, 142 S. Ct. at 2131.

### The Second Amendment

The Second Amendment provides as follows:

> *A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. U.S. Const. amend. II.*

The Second Amendment recognizes an individual right. "There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).

The text of the Second Amendment does not except those with any prior felony convictions or other civil disabilities. This absence is "echoed in state constitutional provisions" as "[o]nly one state constitutional provision addressing the right to bear arms contains an exception for felons[,]" this being Idaho's enacted in 1978. C. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1375

(2009)(Larson, *Four Exceptions*).[1] "We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 581.

The District Court correctly found that Defendant-Appellant was included in "the people" as outlined in the Second Amendment. (R. Memorandum, Opinion and Order, Doc,. ID #22, Pg. ID #105-114)

**The *Bruen* standard**

This two-step process derogated the Second Amendment to "second-class "status, and the Court concluded was "one step too many." *Id*. at 2127. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. Text and history, the Court reiterated,[2] are the guides:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

 *Bruen,* 142 S.Ct. at 2129-30, *quoting Konigsberg v. State Bar*, 366 U.S. 36, 50 (1961).

---

[1] Accessible and downloadable at https://repository.uchastings.edu/hastings_law_journal/vol60/iss6/7/#.

[2] The Court stated earlier in its opinion: "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142S.Ct.at 2126.

**Firearm regulation by the federal government did not commence until the 20th century and Americans of the Founding era understood such power to reside with states and localities**

"As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. *Breun*, 597 U.S. at 26–31, 142 S.Ct. 2111. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Id*., at 29, 142 S.Ct. 2111. Discerning and developing the law in this way is "a commonplace task for any lawyer or judge." *Id*., at 28, 142 S.Ct. 2111.

"Why and how the regulation burdens the right are central to this inquiry. *Id*., at 29, 142 S.Ct. 2111. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." *Id*., at 30, 142 S.Ct. 2111. The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin." *Ibid.* (emphasis deleted)." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024)

The burden §922(g)(8) imposes on the right to bear arms also fits within our regulatory tradition. While we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse, see *Heller*, 554 U.S., at 626, 128 S.Ct. 2783 (2008), we note that §922(g)(8) applies only once a court has found that the defendant "represents a credible threat to the physical safety" of another. See §922(g)(8)(C)(i). That matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon.

Moreover, like surety bonds of limited duration, §922(g)(8)'s restriction was temporary as applied to Rahimi. §922(g)(8) only prohibits firearm possession so long as the defendant "is" subject to a restraining order. §922(g)(8). In Rahimi's case that is one to two years after his release from prison, according to Tex. Fam. Code Ann. §85.025(c) (West 2019)." *Rahimi,* 144 S. Ct. 1889, 1901–02 (2024)

**Felon-in-possession laws like §922(g)(1) are not part of our country's historical tradition of firearm regulation**

Statutes prohibiting felons from possessing firearms did not appear until the 20th century. "[S]tate laws prohibiting felons from possessing firearms or denying firearms license to felons date from the early part of the twentieth century" Larson, *Four Exceptions*, 60 Hastings L.J. at 1376. "[O]ne can with a good degree of confidence say that bans on convicting possessing firearms was unknown before World War I." C.K. Marshall, *Why Can't Martha Stewart Have a Gun?* 32 Harv. J.L & Pub. Pol'y 695, 708 (2009)(Marshall, *Martha Stewart*).[3]

Founding-era laws, statutes or ordinances prohibiting felons from possessing firearms would be the best evidence of a "historical tradition of firearm regulation" consistent with § 922(g)(1), but "scholars have not been able to identify any such laws." *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2009)(Barrett, J., dissenting). "[N]o colonial or state law in eighteenth century America formally restricted the ability to own firearms." Larson, *Four Exceptions* at 1374. "In sum, felon disarmament laws significantly postdated both the Second Amendment and the Fourteenth Amendment." *Id*. at 1376.

Notwithstanding the absence of any actual laws or statutes from either the founding-era or the 19th century that prohibited felons from possessing firearms,

---

[3] Accessible and downloadable at https://www.harvard-jlpp.com/wp-content/uploads/sites/21/2009/03/marshall_final.pdf.

some courts and authorities have claimed that felons have historically been
excluded from possessing firearms. Justice Barrett, then a member of the Seventh
Circuit, examined these contentions in her dissent in *Kanter v. Barr*, *supra.* This
review shows that "[h]istory does not support the proposition that felons lose their
Second Amendment rights solely because of their status as felons." Barrett dissent
in *Kanter v. Barr* at 464.

The first of these supposed authorities is discussions by three state
conventions during the Constitution's ratification process of proposals including
language limiting the Second Amendment's scope "arguably tied to criminality."
*Id*. at 454. New Hampshire's convention recommended that citizens "in actual
rebellion" be disarmed. *Id.*, *quoting* 1 Jonathan Elliot, The Debates in the Several
State Conventions of the Adoption of the Federal Constitution 326 (2d ed. 1891);
*see also* J. Greenlee, *The Historical Justifications for Prohibiting Dangerous
Persons from Possessing Firearms*, 20 Wyoming L. Rev. 249, 266 (2020);13
Marshall, *Martha Stewart*, 32 Harv. J.L & Pub. Pol'y at 713. Samuel Adams
proposed to the Massachusetts convention that only "peaceable citizens" would
retain the right to bear arms. Barrett dissent in *Kanter v. Barr* at 454. Finally, a
minority of the Pennsylvania convention came closest with a proposal that those

convicted of a dangerous crime and/or otherwise posing a public danger be disarmed. *Id*. at 454-55.[4]

These proposals offer not even a thin reed of support, since "none of their relevant limiting language made its way into the Second Amendment." *Id*. at 455. Only New Hampshire's, which spoke to actual rebellion, even passed its convention. *Id*. Furthermore, the stronger evidence goes the other way: proposals from the other states did not include any similar language of limitation or exclusion and four parallel state constitutional provisions enacted before ratification of the Second Amendment did not include any similar limitations or exclusions. *Id*. Proposals discussed but not adopted or enacted cannot establish a historical tradition of firearm regulation.

A second unfounded contention in response "to the dearth of felon-disarmament laws in the eighteenth and nineteenth centuries is to say that such laws would have been unnecessary given the severity with which felons were punished." *Id*. at 458. This argument posits that felons were routinely executed or stripped of all rights and, therefore, explicit provisions depriving them of firearms would have been redundant. *Id*. Justice Barrett concludes, after a historical survey, that "history confirms that the basis for the permanent and pervasive loss of all

---

[4] Accessible and downloadable at tps://scholarship.law.uwyo.edu/cgi/viewcontent.cgi?article=1434&context=wlr.

rights cannot be tied generally to one's status as a convicted felon or to the uniform severity of punishment that befell the class. *Id*. at 461.

A third contention has been that the right to bear arms was similarly limited by a requirement that they be afforded only to "virtuous citizens." *Id*. at 462. The "virtuous citizen" theory posits that felony convictions lead to disqualification of rights like voting and serving on juries and, it would follow, also to bear arms. *Id*. Again, however, a rigorous historical review shows that "the right to arms differs from rights that depend on civic virtue for enjoyment" and "that difference is borne out by historical treatment: we see no explicit criminal, or even more general virtue-based, exclusions from the right to bear arms like we do in other contexts." *Id*. at 464.

Justice Barrett's dissent in *Kanter v. Barr* (7th Cir. 2019) simply and accurately recites our Nation's historical tradition of states and localities disarming violent persons, not nonviolent felons. Even if this Court were to conclude that the federal and state governments possess effectively or functionally equivalent power to regulate firearm possession by some individuals, those powers do not reach to nonviolent felons such as the Defendant-Appellant.

The Supreme Court in *Bruen* directed a historical inquiry and further observed that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them," which in the case of the

Second Amendment was 1791, 142 S.Ct. at 2136, and long before the first felon-in-possession laws appeared in the 20th century. C.K. Marshall, *Why Can't Martha Stewart Have a Gun?* 32 Harv. J.L & Pub. Pol'y 695, 708 (2009)("[O]ne can with a good degree of confidence say that bans on convicting possessing firearms was unknown before World War I."). [5] A law passed nearly a century and a half after the Second Amendment's adoption is not long-standing, a point that seems, as the Supreme Court said some historical inquiries are, *Bruen,* 142 S.Ct. at 2131, straightforward.

### Firearm regulation by the federal government is not consistent with our Nation's historical tradition of firearm regulation

At the time the Second Amendment was adopted in 1791 until well into the 20th century, the federal government was considered to lack any and all authority to regulate or limit the right to keep and bear arms. *Range v. Attorney General United States of America,* 69 4th 96, at 106 (3rd Cir. 2023) (Porter, J. concurring). A constitutional law treatise published in 1829 offered that "[n]o clause in the Constitution could by any rule of construction be conceived to give Congress a power to disarm the people." Porter, J., concurring in *Range* at 69 F.4th at 107 *quoting* W. Rawle, <u>A View of the Constitution of the United States of America</u>. Indeed, the Supreme Court twice stated explicitly in decisions after the Civil War and many decades after the Second Amendment was adopted that it barred Congress from the field of firearm regulation, which was a matter for the states. *United States v. Cruikshank*, 92 U.S. 542, 553 (1875)("The second amendment

---

[5] Accessible and downloadable at https://www.harvard-jlpp.com/wp-content/uploads/sites/21/2009/03/marshall_final.pdf.

declares that [the right to keep and bear arms] shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress."); *Presser v. Illinois*, 116 U.S. 252, 265 (1886)(the Second Amendment "is a limitation only upon the power of Congress and the national government and not upon that of the states.").

Some of the colonies and later some of the states prohibited or regulated firearm possession prior to, around and after the time the Second Amendment was adopted. Other historical examples of persons being disarmed – the English particularly singled out Catholics – but none of the examples regard a law, statute or ordinance that like §922(g)(1) permanently disarmed someone on account of their status as a convicted felon. In *Rahimi*, supra, the Supreme Court held that 18 U.S.C. §922(g) was constitutional because it was similar to the surety laws concerning disarmament in existence at the time the Second Amendment was adopted. However, that disarmament was not permanent in the same manner that the surety laws did not require permanent disarmament.

**English measures renounced by the American Revolution**

The English Crown and Parliament disarmed Catholics and also that the English Bill of Rights authorized Parliament to regulate firearm possession.  It does not follow, however, that these facts support what would amount to a judicial re-write of the Second Amendment. First, the First Amendment prohibits the federal government from punishing or diminishing the rights of an American citizen on account, even partially, his or her religion. The *en banc* Third Circuit was dismissive of this argument for this reason.  *Range* 69 F.4th at 105. Indeed, it makes no sense to acknowledge that the First Amendment prohibits the federal government from using a citizen's religion against him and then concluding that Second Amendment rights may be diminished based on religion. Historical antecedents must be "analogous" the Supreme Court advised in *Bruen* and the

English practices – practices that the American Revolution was fought in large reason to break with – do not fit this bill.

Second, "[t]hat Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Blacks does nothing to prove that [Defendant-Appellant] is part of a similar group today." Id. This analogy is far too broad as the *Range* court concluded. *Id*., citing *Bruen*, 142 S. Ct. at 2134 (noting that historical restrictions on firearms in "sensitive places" do not empower legislatures to designate any place "sensitive" and then ban firearms there).

### Language limiting the Second Amendment that was considered and rejected

Samuel Adams proposed to the Massachusetts convention that only "peaceable citizens" would retain the right to bear arms. Barrett dissent in *Kanter v. Barr;* 919 F.3d 437, 454 (7th Cir. 2019). Pennsylvania convention considered a proposal that those convicted of a dangerous crime and/or otherwise posing a public danger be disarmed. *Id*. at 454-55. Neither even passed the state convention; obviously, no such language made its way to the Second Amendment. Id. at 455. Furthermore, the stronger evidence goes the other way: proposals from the other states did not include any similar language of limitation or exclusion and four parallel state constitutional provisions enacted before ratification of the Second Amendment did not include any similar limitations or exclusions. *Id*. Proposals discussed but not adopted or enacted cannot establish a historical tradition of

firearm regulation.

In *Rahimi*, *supra* the Supreme Court found that §922(g)(8) was constitutional after reviewing the surety laws in place at the time of the enactment of the Second Amendment. In doing so, it was emphasized that a Court had made a finding of a credible threat to an individual and that the disarmament was only temporary. The felon in possession cases do not require a finding of a credible threat and felons are permanently disarmed.

 "Put simply, there is no historical basis" for Congress "to effectively declare" that committing "a[ny] crime punishable by imprisonment for a term exceeding one year," §922(g)(1), will result in permanent loss of one's Second Amendment right "simply because" that is how we define a felony today, *Bruen*, 597 U.S. at 31.

2.      *Whether 18 U.S.C. §922(g)(1) is constitutional as applied to the Defendant-Appellant;*

The District Court found that Defendant-Appellant's felonies are violent and, therefore, he is properly subject to prosecution under § 922(g)(1). First, Defendant-Appellant's conviction for aggravated drug trafficking is not a violent offense. The United States Sentencing Guidelines outlines the difference between a violent offense and a controlled substance offense. U.S.S.G. §4B1.2(a). By its omission from the enumerated offenses that are violent it is clear that drug

17

trafficking is in the controlled substance offense category.

Second, the government fails to identify any Founding-era analog to the modern offense of failure to comply with order or signal of the police, third degree. Initially, the Sixth Circuit recognized that crime as a crime of violence in *U.S. v Welch*, 774 F.3d 891 (6th Cir. 2014). However, that decision was vacated after the United States Supreme Court decided *United States vs. Johnson,* 135 S.Ct. 2551 (2015). It is not a crime of violence currently.

Third and finally, the *Range* court concluded that the issue of whether the defendant's prior felony could be classified as violent or nonviolent was immaterial. There was an absence of historic evidence supporting a permanent ban regardless. *Range*, 69 F.4th at 104 n. 9.

"A more faithful application of *Bruen* requires the Government to proffer Founding-era felony analogues that are "distinctly similar" to Duarte's underlying offenses and would have been punishable either with execution, with life in prison, or permanent forfeiture of the offender's estate. See *Bruen*, 597 U.S. at 27 *United States vs Duarte* 9th 101 F.4th 657 (9th Circuit 2024)

In this matter the Defendant-Appellant was charged with the two felony offenses. He was sentenced to a term of imprisonment which he completed. The purpose of incarceration is punishment and rehabilitation. Thousands of citizens every year are imprisoned with the 18 U.S.C. §3553(a) factors as the guide post. If a person was released from prison by either serving out his/her sentence or being paroled it follows that he/she is not someone who does not continue to be a

credible threat to society. Otherwise, he/she would still be incarcerated. Lastly, the convictions of the Defendant-Appellant would not result in execution, with life in prison nor permanent forfeiture of the offender's estate.

The Court erred in finding that because of the prior convictions of the Defendant-Appellant he is a person who should be permanently disarmed.

3.      *Whether the Court erred in determining that 26 U.S.C. §5861(d) regulates conduct outside the Second Amendment and is therefore permissible following the Supreme Court's decision in New York State Rifle & Pistol Association vs. Bruen, 142 S. Ct. 2111 (2022).*

**§5861(d) does violate the Second Amendment**

The government has argued that *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206(1939) is controlling on this issue. The jurisprudence in 1939 is much different than the cases being decided in 2023. There was not the constitutional analysis required in making decisions at that time as shown below. In interpreting *Miller* the *Heller* Court read *Miller* to say that the "Second Amendment does not protect those weapons not typically possessed by law abiding citizens for lawful purposes, such as short-barreled shotguns." However this reading misses the mark. Historically the short barreled shotgun was used for legitimate lawful purposes. In the 1920's and 1930's commercial weapons like the Ithaca "Auto and Burglar" gun were being manufactured, marketed and sold.

19

These were pistol grip shotguns with barrels less than 18". They were legal at the time and meant for civilian defensive purposes. Approximately 2,500 were manufactured from 1921 to 1925. A double barrel version was available in 1925. *Wikipedia, Ithaca Auto and Burglar* The H & R Handy-Gun which featured a 12 ¼ inch barrel was produced from 1921 through 1934 and sold approximately 54,000.00 units. *Wikipedia H & R Handy Gun.*

Furthermore, short barreled shotguns were favored by law enforcement on stage coaches. Historically the short barreled shotguns have been referred to as "coach guns". They were also utilized in mariner warfare in naval battles. The *Miller* holding is that "The Court cannot take judicial notice that a shotgun having a barrel less than 18 inches has today any reasonable relation to the preservation or efficiency of a well regulated militia, and cannot therefore say that the Second Amendment guarantees to the citizens the right to keep and bear such a weapon." *Miller,* 307 U.S. 178. The inquiry posed today is framed by a different inquiry. At that time the Court concentrated on the definition of "militia" whereas the inquiry today concentrates on "people" who can possess firearms. Consequently, Miller is not the authority the Government summarily claims. *Heller* citing *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206(1939). The Defendant-Appellant has been found by the District Court to be one of the "people" as described in the Second Amendment.

20

In a like manner the Government has argued "The Defendant could have easily complied with §922(g) and §5861(d) by declining to possess the firearms alleged in the Indictment." That is akin to stating that a citizen's complaint of a 4th Amendment search violation could be avoided if a citizen declined to possess illegal contraband. The ends never should justify the means in a constitutional inquiry. The entirety of this issue circles back to Defendant-Appellant being a convicted felon (violent or nonviolent) being prohibited to possess or register a firearm based on his status which is unconstitutional as outlined above.

The Court found that the Defendant-Appellant's failing to register a short barreled shotgun is outside of the scope of the Second Amendment because it is an "unusual and dangerous" firearm. (R. Memorandum, Opinion and Order, Doc. ID #22 Pg. Id #114) The Court then chose not to engage in a historical analysis of whether the statutes are consistent. (R. Memorandum, Opinion and Order, Doc. ID #22 Pg. Id #114) This was error. The Second Amendment refers to the right to bear arms. There is no question that a short barreled shotgun is a firearm as Defined by 26 U.S.C. §5845(a) and specifically set forth in the Indictment as such (R. Indictment, Doc. ID #1 Pg. 1-4). As such, the District Court should have engaged in the requirements to determine constitutionality set out in *Bruen* and affirmed by *Rahimi*.

21

## CONCLUSION

This Court should vacate the convictions of the Defendant-Appellant because laws permanently prohibiting felons from possessing firearms is not a part of this Nation's historical tradition of firearm regulation. As such and in accordance with the teachings in *Bruen* and *Rahimi,* 18 U.S.C. § 922(g)(1) and §5861 as applied to the Defendant-Appellant must yield to his rights secured by the plain, unambiguous text of the Second Amendment.

S/Steven N. Howe
Steven N. Howe
Attorney for Defendant-Appellant
507 North Main Street
Williamstown, KY 41097
(859) 824-0500
stevenhowe@howeattorney.com

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32 (a) (7) (c), I hereby certify that the foregoing Brief contains 5118 words (Times New Roman 14 point).

Respectfully Submitted:

S/Steven N. Howe
Steven N. Howe
507 North Main Street
Williamstown, KY 41097
(859) 824-0500
stevenhowe@howeattorney.com

22

## **CERTIFICATE OF SERVICE**

On July 17, 2024 I electronically filed this document through the ECF system, which will send a notice of electronic filing to: Kyle Winslow, 207 Grandview Drive, Suite 400, Ft. Mitchell KY 41017 and Charles P. Wisdom, Jr. 206 West Vine Street, Suite 300, Lexington, KY 40507-1612

S/Steven N. Howe

STEVEN N. HOWE

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DESCRIPTION OF DOCUMENT | PAGE ID# |
|---|---|---|
| 1 | Indictment | 1-4 |
| 14 | Motion to Dismiss | 33-45 |
| 22 | Memorandum, Opinion and Order | 105-114 |
| 28 | Plea Agreement | 121-128 |
| 36 | Judgment in a Criminal Case | 153 |
| 37 | Notice of Appeal | 160 |
|  |  |  |