CASE NO. 24-5334

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                    PLAINTIFF-APPELLEE

V.

DALTON SAMUEL BROOKS                    DEFENDANT-APPELLANT

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

BRIEF OF THE PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA

---

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
CHIEF, APPELLATE DIVISION

BY:  AMANDA HARRIS HUANG
ASSISTANT UNITED STATES ATTORNEY
260 W. VINE STREET, SUITE 300
LEXINGTON, KENTUCKY 40507-1612
(859) 685-4874
Amanda.HarrisHuang@usdoj.gov

COUNSEL FOR PLAINTIFF-APPELLEE

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Statement Regarding Oral Argument ....................................................vi

Introduction ..........................................................................................1

Statement of the Issues.........................................................................1

Statement of the Case............................................................................2

Summary of the Argument.....................................................................4

Argument

     I.     Brooks's facial challenge to § 922(g)(1) is barred by this Court's recent precedent.........................................................................5

     II.    The district court correctly denied Brooks's as-applied challenge.......6

     III.   Brooks's challenge to 26 U.S.C. §5861(d) also fails .........................11

Conclusion ...........................................................................................22

Certificate of Service

Designation of District Court Documents

i

## I. Cases

*ACLU of Ky. v. McCreary Cnty., Ky.*,
  607 F.3d 439 (6th Cir. 2010) ...................................................................14

*Begay v. United States*,
  553 U.S. 137 (2008)....................................................................................10

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)...............................................................12, 14-15, 18-19

*Fusaro v. Howard*,
  19 F.4th 357 (4th Cir. 2021) ............................................................... 21-22

*Garland v. Range*,
  144 S. Ct. 2706 (2024) .................................................................................7

*Garland v. Range*,
  No. 23-374, 2023 WL 6623648 (U.S. Oct. 5, 2023) ............................................8

*Grutter v. Bollinger*,
  288 F.3d 732 (6th Cir. 2002) ..................................................................14

*Johnson v. United States*,
  576 U.S. 591 (2015)....................................................................................10

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022)........................................................12-15, 17, 19-20

*Range v. Attny Gen.*,
  53 F.4th 262 (3d Cir. 2023) .................................................................7

*Skyes v. United States*,
  564 U.S. 1 (2011)........................................................................................10

*Taylor v. Buchanan*,
  4 F.4th 406 (6th Cir. 2021) ..................................................................13

*United States v. Amos*,
    501 F.3d 524 (6th Cir. 2007) .................................................................. 16, 20-21

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ....................................................................16

*United States v. Ellis*,
    497 F.3d 606 (6th Cir. 2007) ...........................................................................8

*United States v. Goins*,
    No. 23-5848, 2024 WL 4441462 (6th Cir. Oct. 8, 2024) ................................ 9-11

*United States v. Golding*,
    332 F.3d 838 (5th Cir. 2003) ....................................................... 18, 20-21

*United States v. Hayes*,
    7 F.3d 144 (9th Cir. 1993) ...........................................................................18

*United States v. Loney*,
    331 F.3d 516 (6th Cir. 2003) ...............................................................6, 8, 13

*United States v. Miller*,
    307 U.S. 174 (1939) ............................................................................ 12-14

*United States v. Partee*,
    No. 24-5114, 2024 WL 4224982 (6th Cir. Sept. 18, 2024) ...................................6

*United States v Rahimi*,
    144 S. Ct. 1889 (2024) .............................................................. 11-12, 15, 17, 21

*United States v. Williams*,
    113 F.4th 637 (6th Cir. 2024) ..................................................................... 1, 5-12

## II.  Statutes, Rules & Guidelines

U.S. Const. amend. II ....................................................................................11

18 U.S.C. § 922(g)(1) .......................................................................... 1-9, 21

26 U.S.C. § 5811 ...................................................................................20

26 U.S.C. § 5812 ...................................................................................20

26 U.S.C. § 5821 ...................................................................................20

26 U.S.C. § 5822 ...................................................................................20

26 U.S.C. § 5841 ...................................................................................20

26 U.S.C. § 5845 ...................................................................................18

26 U.S.C. § 5861(d) .................................................................... 1-4, 17-21

### III.  Historical Statutes

2 General Laws of Massachusetts from the Adoption of the Constitution to
February 1822 (1823)....................................................................19

3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of
October, One Thousand Seven Hundred (1810)....................................19

15 The Public Records of the Colony of Connecticut 191 (1890) ...........19

Colonial Laws of Massachusetts Reprinted from the Edition of 1672 (1890) ........19

Laws of the Commonwealth of Massachusetts from November 28, 1780, to
February 28, 1807 (1807) ..................................................................19

Laws of the State of Maine (1830) ...........................................................19

Laws of the State of New Hampshire; with the Constitutions of the United States
and of the State Prefixed (1830) ........................................................19

The Charter and Ordinances of the City of Providence, with the General Assembly
Relating to the City (1835) ................................................................19

## IV. Other Authorities

Alcohol, Tobacco, Firearms and Explosives Firearms Commerce in the United States, Annual Statistical Update 2021, https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download ................................................................................ 16-17

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument.

**INTRODUCTION**

Federal law makes it unlawful to possess a firearm as a felon.  18 U.S.C. § 922(g)(1).  Federal law also makes it unlawful to possess a short-barrel shotgun without registering it in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).  Brooks, a felon with a history of dangerous convictions, was found in possession of both a shotgun and a short-barrel shotgun and pleaded guilty to violations of § 922(g)(1) and § 5861(d).  The district court correctly found that both statutes were constitutional under the Second Amendment.  As this Court's recent decision in *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) makes clear, Brooks's challenges to § 922(g)(1) fail.  Facial challenges to § 922(g)(1) are foreclosed by *Williams*, and Brooks's criminal history renders his as-applied challenge meritless.  Additionally, Supreme Court precedent forecloses Brooks's challenge to § 5861(d).  And even if it did not, the Second Amendment does not protect the possession of certain dangerous weapons, like short-barrel shotguns.  What is more, history and tradition support firearm regulations like § 5861(d).

**STATEMENT OF THE ISSUES**

I.      Whether 18 U.S.C. § 922(g)(1) is facially unconstitutional?

II.     Whether 18 U.S.C. § 922(g)(1) is unconstitutional as applied to

Brooks?

III.    Whether 21 U.S.C. § 5861(d) is unconstitutional?

## STATEMENT OF THE CASE

On April 13, 2023, the Maysville Police Department received a tip that

Brooks and others were cooking and selling methamphetamine.  [R. 28:  Plea

Agreement at 122 (¶ 4(a)).]  Later that day, police stopped Brooks in his vehicle.

[*Id.* (¶ 4(b)).]  When officers searched his vehicle, they found methamphetamine,

marijuana, a shotgun that had been modified to have an overall length of less than

26 inches and a barrel length of less than 18 inches, and another shotgun.  [*Id.*]

Brooks told officers that he "purchased, fixed, and sold guns" to make money.

[*Id.*]  Brooks did not register the short barrel shotgun in the National Firearms

Registration and Transfer Record.  [*Id.* (¶ 4(d)).]  Brooks had previously been

convicted of the felony offenses of failure to comply with an order or signal of

a police officer and aggravated drug trafficking.  [*Id.* (¶ 4(e)).]  Brooks's criminal

history also included alcohol intoxication in a public place, operating a motor

vehicle under the influence, possession of marijuana, operating a motor vehicle

under the influence (second offense), endangering the welfare of a minor, cruelty

to animals, negligent assault, and operating a vehicle on a suspended license.
[R. 39:  Presentence Report at 174-78 (¶¶ 27, 29, 30, 32, 33, 36, 38).]

A federal grand jury in the Eastern District of Kentucky returned an indictment charging Brooks with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possessing a shotgun that had been modified to have an overall length of less than 26 inches and a barrel length of less than 18 inches without registering it to the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) of the National Firearms Act (NFA).  [R. 1:  Indictment at 1-2.]  Brooks ultimately entered a guilty plea to the indictment, pursuant to a conditional plea agreement with the government.  [R. 28: Plea Agreement at 120-22 (¶¶ 1, 4).]  Brooks reserved the right to appeal the district court's (Bunning, J.) denial of his pretrial motion to dismiss, including "(1) whether the Court erred in determining that the United States made the requisite showing that this Nation has a historical tradition of disarming individuals convicted of felonies; (2) whether 18 U.S.C. § 922(g)(l) is constitutional as applied to the Defendant; and (3) whether the Court erred in determining that 26 U.S.C. 5861(d) regulates conduct outside the Second Amendment."  [*Id.* at 120 (¶ 1).]

The district court sentenced Brooks to imprisonment for fifty-seven months. [R. 36:  Judgment at 154.]  This appeal followed.  [R. 37:  Notice of Appeal at 160.]

## SUMMARY OF THE ARGUMENT

I.      Brooks's facial challenge to 18 U.S.C. § 922(g)(1) is foreclosed by this Court's recent precedent that held that the statute was not subject to Second Amendment facial challenges.

II.     Brooks's as-applied challenge to § 922(g)(1) is meritless.  Although the government continues to maintain that § 922(g)(1) is constitutional in all its applications, Brooks's as-applied challenge fails under the framework outlined in this Court's recent precedent.  In raising his as-applied challenge under the Second Amendment, Brooks failed to meet his burden to show that he is not dangerous. Brooks's conviction for aggravated drug trafficking alone demonstrates his dangerousness because drug trafficking is inherently dangerous to the community. Moreover, Brooks's criminal convictions for failing to comply with a signal by police, driving under the influence, negligent assault, endangering the welfare of a minor, and cruelty to animals further demonstrate that he is dangerous.  Brooks's as-applied challenge easily fails.

III.    Brooks's challenge to 26 U.S.C. 5861(d) is foreclosed by Supreme Court precedent that remains unaltered by recent Supreme Court caselaw.  This Court is bound to follow both Supreme Court precedent and dicta.  In any event, dangerous and unusual weapons, like short-barrel shotguns, fall outside the scope

4

of Second Amendment protections.  Even if NFA firearms, like short-barrel

shotguns, are protected by the text of the Second Amendment, the regulation of

those weapons is supported by the history and tradition of regulations surrounding

dangerous and unusual weapons, as well as firearm regulations surrounding the

inspection, marking, and licensure of gunpowder and firearms.  And at a minimum,

Brooks's challenge fails because he is a felon and is not permitted to possess any

firearm, let alone an NFA firearm.

## ARGUMENT

I.    **Brooks's facial challenge to § 922(g)(1) is barred by this Court's recent precedent.**

Although felons are among "the people" under the Second Amendment,

"most applications of § 922(g)(1) are constitutional" because "history and tradition

demonstrate that Congress may disarm individuals they believe are dangerous."

*United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024).  Therefore,

§ 922(g)(1) "is not susceptible to a facial challenge."  *Id.*

In the instant case, Brooks moved to dismiss the Indictment.  [R. 14:

Motion at 33.]  Relevant here, Brooks maintained that "[f]elon-in-possession laws

like § 922(g)(1) are not part of our country's historical tradition of firearm

regulation."  [*Id.* at 40.]  Brooks's claim amounted to a facial challenge to

§ 922(g)(1), and the district court rejected it.  [R. 22:  Opinion and Order at 108.]

5

This Court reviews the denial of a motion challenging the constitutionality of a statute de novo. *United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003).

On appeal, Brooks continues to challenge the facial validity of 18 U.S.C. § 922(g)(1) by claiming that there is no "historical tradition of disarming individuals convicted of felonies." Brooks's Brief at 6-17. After Brooks filed his brief, however, this Court held that there is a "history and tradition" allowing "Congress [to] disarm individuals they believe are dangerous." *Williams*, 113 F.4th at 657. "Section 922(g)(1) is an attempt to do just that" and, therefore, "the provision is not susceptible to a facial challenge." *Id.* Indeed, to succeed on a facial challenge, a defendant "must show that there exists no set of circumstances under which the Act would be valid." *Id.* The defendant in *Williams* could not make that showing, *id.*, and Brooks cannot either. Brook's facial challenge is thus foreclosed by *Williams*. *See, e.g.*, *United States v. Partee*, No. 24-5114, 2024 WL 4224982, at *1 (6th Cir. Sept. 18, 2024) (relying on *Williams* to reject defendant's facial challenge to § 922(g)(1)).

## II.    The district court correctly denied Brooks's as-applied challenge.

"[M]ost applications of § 922(g)(1) are constitutional." *Williams*, 113 F.4th at 657. Although "§ 922(g)(1) *might* be susceptible to an as-applied challenge in certain cases," it is the defendant's "burden to demonstrate that he is not

dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope." *Id.* at 657 (emphasis added). In making this assessment, the court can consider "the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1)." *Id.* at 657-58. Prior convictions that "pose a significant threat of danger" and "put someone's safety at risk," "justify a finding of danger." *Id.* at 659. "A prime example" of this category of convictions "is drug trafficking" because "[d]rug trafficking is a serious offense, that in itself, poses a danger to the community." *Id.* "Ultimately," crimes that put "someone's safety at risk" likely "justify a finding of danger." *Id.*

Relying on the Third Circuit's decision in *Range v. Attny Gen.*, 53 F.4th 262 (3d Cir. 2023) (en banc), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706, 2706-07 (2024), Brooks moved to dismiss the indictment arguing that § 922(g)(1) was unconstitutional as applied to him, as an allegedly "nonviolent felon[]." [R. 14: Motion at 34, 43.] Brooks did not articulate why he was "non-volent" other than to list his two prior felony convictions. [*Id.* at 34, 43.] The district court rejected Brooks's as-applied challenge. [R. 22: Opinion and Order at 110-11.] Unlike the *Range* defendant's "conviction for making a false statement on a food stamps application," Brooks's conviction for aggravated drug trafficking was "inherently violent." [*Id.* at 110-11.]

7

This Court reviews the denial of a motion challenging the constitutionality of a statute de novo. *Loney*, 331 F.3d at 524. Any factual findings are generally reviewed for clear error. *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007).

The government maintains that § 922(g)(1) is constitutional in all of its applications and is not susceptible to as-applied challenges. *See Garland v. Range*, No. 23-374, 2023 WL 6623648, at *19-22 (U.S. Oct. 5, 2023) (Petition for Writ of Certiorari). That is, § 922(g)(1) is consistent with our nation's historical tradition of firearm regulation. Several historical precursors to § 922(g)(1)—including felony-punishment laws subjecting those who committed serious crimes to death or estate forfeiture; historical laws disarming other criminal offenders and loyalists; and laws disarming persons whose firearm possession posed a danger to society— establish that Congress may lawfully disarm all felons, whose status as serious criminal offenders supports Congress's legislative judgment that their firearm possession is contrary to the public interest. *See* United States's Brief at 17-37 in *United States v. Hurdle*, No. 24-5067; United States's Brief at 17-33 in *United States v. Morton*, No. 24-5022.

Regardless, *Williams* effectively forecloses Brooks's as-applied challenge and supports the district court's determination that § 922(g)(1) is constitutional as applied to him. Like the defendant in *Williams*, Brooks has already "availed himself" of his opportunity to show that he is not dangerous by raising an as-

8

applied challenge to § 922(g)(1).  113 F.4th at 663.  Brooks failed to point to any

reason that he is not dangerous; rather, he maintained only that his felony

convictions were "nonviolent" without further explanation.  [R. 14:  Motion at 34,

43.]  For this reason, Brooks has failed to "me[et] his burden to demonstrate that he

is not dangerous." *Williams*, 113 F.4th at 657.  Should Brooks suggest that he is

entitled to remand for further consideration, this Court did not require such

a remedy in *Williams*, and it is not required here.  *See id.* at 663 (affirming district

court's denial of defendant's motion to dismiss because defendant had "availed

himself of his constitutionally required opportunity to show that he is not

dangerous" and "his record demonstrates that he is dangerous"); *see also United

States v. Goins*, No. 23-5848, 2024 WL 4441462, at *5 (6th Cir. Oct. 8, 2024)

(rejecting an as-applied challenge to defendant's conviction under 18 U.S.C.

§ 922(g)(1) after *Williams* without remanding case).

    Indeed, Brooks's criminal record demonstrates that he is dangerous;

Brooks's relatively recent felony convictions demonstrate as much.  First, Brooks

has a felony conviction for aggravated drug trafficking, and "[d]rug trafficking is

a serious offense that, in itself, poses a danger to the community." *Id.* at 659.

Drug trafficking is "[a] prime example" of a crime that poses "a significant threat

of danger." *Id.*  Second, Brooks's other felony conviction for failing to comply

with an order or signal of a police officer similarly poses a danger to the

community.  In Brooks's case, he "fled from a police officer" in a vehicle "after receiving a signal to stop."  [R. 39:  Presentence Report at 177 (¶ 34).]  The Supreme Court has indicated that such conduct is as dangerous as burglary or arson because "[c]onfrontation with police is the expected result of vehicle flight."  *Skyes v. United States*, 564 U.S. 1, 9-10 (2011), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).  Such flight "places property and persons at serious risk of injury," and the "[r]isk of violence is inherent to vehicle flight."  *Id.* at 10.  These convictions "justify a finding of danger."  *Williams*, 113 F.4th at 659.

If Brooks's recent felony convictions were not enough to establish that he is dangerous, his other criminal history settles the score.  In 2020, Brooks served 50 days in jail for negligent assault after he "recklessly caused physical harm to another or to another's unborn."  [R. 39:  Presentence Report at 178 (¶ 38).]  Brooks also has two convictions for driving under the influence, one conviction for public intoxication, and multiple convictions for operating a vehicle on a suspended license.  [*Id.* at 175-77 (¶¶ 27, 29, 30, 31, 35-37).]  Brooks's pattern of driving while intoxicated is certainly dangerous because "drunk driving is an extremely dangerous crime."  *Begay v. United States*, 553 U.S. 137, 141 (2008), *abrogated on other grounds by Johnson*, 576 U.S. 591.  Indeed, this Court recently determined that a defendant's repeated prior convictions for DUI, public intoxication, and driving on a suspended license "reveal[ed] a dangerous pattern of

10

misuse of alcohol and motor vehicles" and amounted to "a danger to public safety." *Goins*, 2024 WL 4441462, at *7. Brooks was also convicted of endangering the welfare of a minor after his two toddler children were found alone outside. [R. 39: Presentence Report at 176 (¶ 32).] One of the children was naked and the other was wearing only a diaper; officers believed the children had crossed "railroad tracks to arrive at the location where they were found by police." [*Id.*] Brooks also has a conviction for cruelty to animals after he left seven dogs in a vacant house "in extreme heat" and without "adequate food and drink." [*Id.* (¶ 33).] Finally, Brooks's conduct in the instant case shows his propensity for dangerousness. Brooks, who is a felon, did not just possess firearms but admittedly "bought and sold guns for money." [R. 39: Presentence Report at 172 (¶ 7).] These convictions underscore that Brooks has not and cannot meet his "burden to demonstrate that he is not dangerous." *Williams*, 113 F.4th at 657.

### III.    Brooks's challenge to 26 U.S.C. §5861(d) also fails.

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment right "was never thought to sweep indiscriminately" and is "not a right to keep and carry *any weapon whatsoever in any manner whatsoever* and for whatever purpose." *United States v Rahimi*, 144

11

S. Ct. 1889, 1897 (2024) (emphasis added) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)) (emphasis added); *see also Williams*, 113 F.4th at 643 (highlighting language from *Heller*).  The Second Amendment does not "guarantee[] the right to keep and bear" short-barrel shotguns, *United States v. Miller*, 307 U.S. 174, 178 (1939), because "the Second Amendment right, whatever its nature, extends only to certain types of weapons."  *Heller*, 554 U.S. at 623.  At bottom, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barrel shotguns."  *Id.* at 625.

Here, Brooks moved to dismiss Count 2 of the Indictment that charged him with possessing a firearm that had been modified to have an overall length of less than 26 inches and a barrel length of less than 18 inches that was not registered to him in the National Firearms Registration.  [R. 1:  Indictment at 2; R. 14:  Motion at 43-44.]  Brooks argued only that "it was impossible to comply with registering" the firearm and that "[t]he prohibition of possession of unregistered firearms is likewise not rooted in the Second Amendment's text and history."  [R. 14:  Motion at 43.]  Relying on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and *Heller*, the district court denied Brooks's motion and reasoned that "[o]wning a short-barrel shotgun is not an ordinary self-defense need."  [R. 22: Opinion and Order at 112-13.]  Because certain firearms, like short-barrel shotguns

are "considered unusual and dangerous, they fall outside the Second Amendment's scope, as explicitly stated in *Bruen* and *Heller*."  [*Id.* at 113.]

This Court reviews the denial of a motion challenging the constitutionality of a statute de novo.  *Loney*, 331 F.3d at 524.

        A.     *Brooks's challenge is foreclosed by Supreme Court precedent.*

Brooks's Second Amendment claim is foreclosed by *Miller* and subsequent Supreme Court precedent.  In *Miller*, the defendants were charged with transporting a short-barrel shotgun in interstate commerce having not registered the firearm as required by the NFA.  307 U.S. at 175.  The Supreme Court held that the Second Amendment does not "guarantee[] the right to keep and bear" a short-barrel shotgun.  *Id.* at 178.  Here, Brooks possessed a short-barrel shotgun without registering it, in violation of the NFA.  [R. 39:  Presentence Report at 172 (¶ 7).] *Miller* has not been overruled by another Supreme Court decision and is therefore binding.  *See Taylor v. Buchanan*, 4 F.4th 406, 408 (6th Cir. 2021) ("[W]e may not disregard Supreme Court precedent unless and until it has been overruled by the Court itself.").  This is true even if "intervening Supreme Court decisions have undermined the reasoning of an earlier decision."  *Id.*  But as explained below, subsequent Supreme Court decisions only affirm *Miller*'s holding and do not undermine it.

13

Brooks does not contest the holding from *Miller*.  Brooks's Brief at 19-20.

Nor can he.  His critique regarding the "constitutional analysis" in *Miller* is not an

argument this Court can entertain because it is the Supreme Court's "prerogative"

to "overrul[e] its own decisions."  *Grutter v. Bollinger*, 288 F.3d 732, 743-44 (6th

Cir. 2002) (en banc).  Brooks's similar critique that *Heller*'s reading of *Miller*

"misses the mark" is likewise not for this Court to decide.  Brooks's Brief at 19.

Although it may have been dicta, *Heller* made clear that, a short-barrel shotgun is

"the type of weapon" that "was not eligible for Second Amendment protection."

*Heller*, 554 U.S. at 622 (explaining *Miller*).   "Lower courts are obligated to

follow" even "Supreme Court dicta, particularly where there is not substantial

reason for disregarding it."  *ACLU of Ky. v. McCreary Cnty., Ky*., 607 F.3d 439,

447 (6th Cir. 2010).

Additionally, *Heller* and *Bruen* cite *Miller* as controlling law.  For example,

*Heller* interpreted *Miller* as holding that "the Second Amendment does not protect

those weapons not typically possessed by law-abiding citizens for lawful purposes,

such as short-barrel shotguns."  554 U.S. at 625.  And *Heller* explained that the

Court would eventually consider "*what* types of weapons *Miller* permits."  *Id.* at

624.  *Bruen* did not cast doubt on *Miller* and instead iterated that *Heller* and *Miller*

found that the Second Amendment protects only "weapons that are in common use

at the time."  *Bruen*, 597 U.S. at 21.  Moreover, *Bruen* and *Rahimi* both stressed

14

that the Second Amendment "was not a right to keep and carry *any weapon*

*whatsoever* . . . ."  *Id.* at 21; *Rahimi*, 144 S. Ct. at 1897.  This Court is bound by

Supreme Court precedent and dicta and should affirm the district court's decision.

### B.     Possession of a short-barrel shotgun is not conduct protect by the Second Amendment's plain text.

Under *Bruen*, the first question when considering the constitutionality of

a firearms regulation is whether "the Second Amendment's plain text covers an

individual's conduct."  597 U.S. at 17.  But that plain text cannot be read in

isolation.  Instead, "the Second Amendment . . . codified a *pre-existing* right."

*Heller*, 554 U.S. at 592.  It is "fairly supported by the historical tradition of

prohibiting the carrying of dangerous and unusual weapons that the Second

Amendment protects the possession and use of weapons that are in common use at

the time."  *Bruen*, 597 U.S. at 21.  The Second Amendment "does not protect those

weapons not typically possessed by law-abiding citizens for lawful purposes, such

as short-barrel shotguns."  *Heller*, 554 U.S. at 625.  Thus, the term "firearm" does

not include dangerous and unusual weapons, weapons that are not in common use,

or weapons that are not typically possessed by law-abiding citizens for lawful

purposes.

The plain text of the Second Amendment does not guarantee the unequivocal

right to possess a short-barrel shotgun.  First, short-barrel firearms are not typically

15

possessed by law-abiding citizens for lawful purposes.  Short-barrel shotguns

instead are dangerous and unusual.  "In comparison to a regular shotgun, a sawed-

off shotgun is generally less, not more, accurate and has a lower range." *United

States v. Amos*, 501 F.3d 524, 531 (6th Cir. 2007) (McKeague, J. dissenting).  "It is

the combination of low, somewhat indiscriminate accuracy, large destructive

power, and the ability to conceal that make a sawed-off shotgun useful for only

violence against another person, rather than, for example, against sport game." *Id.*

"[M]any courts have explained that a long gun with a shortened barrel is both

dangerous, because its concealability fosters its use in illicit activity, and unusual,

because of its heightened capability to cause damage." *United States v. Cox*, 906

F.3d 1170, 1185 (10th Cir. 2018).

Second, short-barrel shotguns are not in common use.  Indeed, a short-barrel

shotgun's lower accuracy and range "are presumably considered drawbacks by

most gun enthusiasts." *Amos*, 501 F.3d at 531 (McKeague, J. dissenting).  In 2019,

for example, there were only 162,267 short-barrel shotguns registered through the

NFA.  *See* Alcohol, Tobacco, Firearms and Explosives Firearms Commerce in the

United States, Annual Statistical Update 2021,

https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-

report/download at p. 16 (last visited October 8, 2024).  By comparison, there were

480,735 shotguns *manufactured* in the United States in 2019 alone, plus an

16

additional 743,252 shotguns that were imported from other countries. *Id.* at pp. 2, 6. By 2020, nearly two million regular shotguns were imported into the United States. *Id.* at p. 6. The number of short-barrel shotguns is also dwarfed when compared to the over three million pistols manufactured in the United States in 2019. *Id.* at p. 2. By 2020, more than four million handguns were imported into the United States. *Id.* at p. 6. Thus, short-barrel shotguns are not protected by the Second Amendment because they are not in common use.

> ### C.    Section 5861(d) is consistent with the historical tradition of firearms regulation.

Even assuming short-barrel shotguns constitute "firearms" under the text of the Second Amendment, the history and tradition of firearm regulation supports the constitutionality of § 5861(d). Section 5861(d) is constitutional because it is "relevantly similar to laws that our tradition is understood to permit," particularly considering the "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S. Ct. at 1898.

First, the NFA's prohibition on the possession of *unregistered* short-barrel shotguns is supported by historical tradition of banning dangerous and unusual weapons. As the Supreme Court recently observed, "colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons,'" and this was a fact the Court "already acknowledged in *Heller*." *Bruen*, 597 U.S. at 47

17

(quoting *Heller*, 554 U.S. at 627); *see Heller*, 554 U.S. at 627 (collecting historical laws prohibiting the carrying of dangerous and unusual weapons).  As explained *supra*, short-barrel shotguns, like sawed-off shotguns, "are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force."  *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993).  Indeed, Congress included short-barrel shotguns in the NFA's definition of a firearm because Congress believed such weapons had no "appropriate sporting use or use for personal protection."  *United States v. Golding*, 332 F.3d 838, 842 (5th Cir. 2003).  And whereas historical laws "prohibit[ed] the carrying of dangerous and unusual weapons," altogether, *Heller*, 554 U.S. at 627, the NFA actually *permits* the possession of short-barrel shotguns so long as they are properly registered and taxed.  *See* 26 U.S.C. § 5845, 5861(d).  Thus, the NFA is less burdensome than historical counterparts.

Second, state laws surrounding the inspection, marking, and licensure of gunpowder and firearms likewise show a history and tradition of comparable firearm regulation.  Several states had laws relating to the inspection and marking of gunpowder, which "was essential to the operation of firearms at that time," meaning that gunpowder regulations "necessarily affected the ability of gun owners to use firearms for self-defense."  *Miller et al v. Bonta, et al.*, No. 3:19-cv-1537 (S.D. Cal. 2022) (Dkt. 137-3, at 22) (Declaration of Prof. Saul Cornell); *cf.*

18

*Bruen*, 597 U.S. at 58 (citing article by Cornell).[1]  Colonial and early state governments likewise prohibited the manufacture and transportation of gunpowder without a license.[2]  At least two states in the early republic required gun barrels to be proved and marked and prohibited the obliteration of the proof marks.  *See Heller*, 554 U.S. at 605 (observing that examining the "public understanding of a legal text in the period after its enactment or ratification" is "a critical tool of constitutional interpretation" (emphasis omitted)).[3]

Although these statutes are not identical to § 5861(d), they are "relevantly similar."  *Bruen*, 597 U.S. at 29.  *Bruen* made clear that the government need only identify a "historical *analogue*, not a historical *twin*."  *Id.* at 30.  The ultimate

---

[1] 3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred 240-44 (1810); 2 General Laws of Massachusetts from the Adoption of the Constitution to February 1822, at 199 (1823); Laws of the State of New Hampshire; with the Constitutions of the United States and of the State Prefixed 277 (1830).

[2] *See* Colonial Laws of Massachusetts Reprinted from the Edition of 1672, at 126 (1890) (1651 statute) ("no person . . . shall transport any Gun-powder out of this Jurisdiction, without license first obtained from some two of the Magistrates"); 15 The Public Records of the Colony of Connecticut 191 (1890) (1775 statute) (no "gun-powder made and manufactured . . . shall be exported out of the [Colony] without . . . license"); The Charter and Ordinances of the City of Providence, with the General Assembly Relating to the City 37 (1835) (1821 law) (prohibiting selling gunpowder within the town of Providence "without having a license therefor").

[3] Laws of the Commonwealth of Massachusetts from November 28, 1780, to February 28, 1807, at 259 (1807); Laws of the State of Maine 546 (1830).

question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.  Indeed, § 5861(d) imposes a minimal "burden on the right of armed self-defense" because it merely requires the registration of short-barrel shotguns (and other dangerous firearms) in the National Firearms Registration and Transfer Record and payment of an excise tax of $200 upon the manufacture, importation, or transfer of an NFA firearm.  26 U.S.C. §§ 5811, 5812, 5821, 5822, 5841.  Moreover, the statute does not impact the availability of regular shotguns, handguns, and other firearms better suited for self-defense.  *See Amos*, 501 F.3d at 531 (McKeague, J., dissenting) (noting that "handguns and other generic firearms are not subject to the Act's stringent controls").  The burden of the NFA is no greater than the burdens imposed by historical laws relating to the sale and marking of firearms and gunpowder.  And neither the historical laws nor § 5861(d) deprived citizens of the use of firearms for self-defense.

Section 5861(d) is also "comparably justified."  For example, the laws requiring marking of gun barrels and gunpowder were designed to protect citizens from explosions and to allow unsafe barrels or powder to be traced to the inspector who first affixed the markings.  Section 5861(d) seeks to protect citizens from a specified subset of firearms that are more dangerous than typical firearms so that they can be traced in the event that they are used for violent purposes.  *See*

*Golding*, 332 F.3d at 842 (explaining that certain NFA firearms are not useful for

sporting or personal protection and that there is a "virtual inevitability that" the

possession of such firearms "will result in violence"); *see also Amos*, 501 F.3d at

531-32 (McKeague, J. dissenting) (explaining dangers of NFA firearms).

> D.    At the very least, § 5861(d) is constitutional as applied to
>       felons, like Brooks.

A facial challenge "is the most difficult challenge to mount successfully,

because it requires a defendant to establish that no set of circumstances exists

under which the Act would be valid." *Rahimi*, 144 S. Ct. at 1898.  Here, § 5861(d)

at least has some constitutional applications, including to Brooks himself.

Brooks as a convicted felon is barred from possessing any firearm, including

NFA firearms.  *See* 18 U.S.C. § 922(g)(1).  As explained *supra*, § 922(g)(1) is both

facially constitutional and constitutional as applied to Brooks.  Because Congress

may prohibit felons like Brooks from possessing any firearms, it also may ban

possession of a particularly dangerous subset of firearms, including unregistered

short-barrel shotguns.  Because § 5861(d) is constitutional as applied to felons, like

Brooks, it is constitutional on its face.  As this Court has recognized, "if a litigant

loses an as-applied challenge because the court rules as a matter of law that the

statute or ordinance was constitutionally applied to him, it follows *a fortiori* that

the law is not unconstitutional in all applications." *Fusaro v. Howard*, 19 F.4th 357, 373 (4th Cir. 2021) (internal brackets omitted).

## CONCLUSION

This Court should affirm Brooks's convictions.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
CHIEF, APPELLATE DIVISION

By:    s/ Amanda Harris Huang
       Assistant United States Attorney
       260 W. Vine Street, Suite 300
       Lexington, Kentucky 40507-1612
       (859) 685-4874
       Amanda.HarrisHuang@usdoj.gov

## CERTIFICATE OF SERVICE

On October 15, 2024, I electronically filed this brief through the ECF

system, which will send the notice of docket activity to:

Steven N. Howe
*Attorney for Dalton Samuel Brooks*

s/ Amanda Harris Huang
Assistant United States Attorney

## APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Record Entry | Description of Document | Page ID# |
|---|---|---|
| 1 | Indictment | 1-4 |
| 14 | Motion | 33-45 |
| 22 | Opinion and Order | 105-14 |
| 28 | Plea Agreement | 120-28 |
| 36 | Judgment | 153-59 |
| 37 | Notice of Appeal | 160-61 |
| 39 | Presentence Report | 170-86 |